UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

VICTOR CANCEL-RÍOS,

    Petitioner,

    v.

UNITED STATES OF AMERICA,

    Respondent.

Civil No. 10-1386 (JAF)

(Crim. No. 08-369)

**OPINION AND ORDER**

Petitioner brings this pro-se petition for relief from a federal court conviction pursuant to 28 U.S.C. § 2255. (Docket No. 1.[1]) Respondent opposes (Docket No. 5), and Petitioner does not reply.

**I.**

**Factual History**

Petitioner was arrested on October 7, 2008, at Luis Muñoz Marín International Airport in San Juan, Puerto Rico, as he was reentering the United States from the Dominican Republic. (Docket No. 1 at 3.) An Immigration and Customs Enforcement ("ICE") official had received information "indicating that [Petitioner] had previously assisted and harbored an illegal alien into the United States with false documents and that he might have traveled to the DR to engage in sexual activities with a minor female." (Crim. No. 08-369, Docket No. 1-2 at 2.) On the basis of this information, Petitioner was "selected for a secondary inspection" by a Customs and Border

---

[1] Unless otherwise noted, all docket citations refer to Civil No. 10-1386.

Civil No. 10-1386 (JAF) -2-

Protection officer at the airport. (Id.) The officer searched Petitioner's luggage, personal items, and cell phone. (Id.) The search of the cell phone "revealed approximately eight photographs taken by [Petitioner] depicting sexually explicit conduct of what appeared to be a . . . minor female." (Id.)

Having discovered these photographs, an ICE official interviewed Petitioner, who "stated that he had travelled to the DR from St. Croix to meet a young female friend that was his girlfriend." (Id.) Government officials called the female and learned that she was sixteen. (Id. at 3.) "At this point, [Petitioner] was advised of his Miranda Rights, which he voluntarily waived. He then proceeded to admit that he knew the minor was 16 years old before he purchased the ticket to travel to DR." (Id.) Petitioner also admitted to having engaged in sexual activity with the female and taken sexually-explicit photographs of her. (Id.)

On the basis of this investigation, Petitioner was indicted for violations of 18 U.S.C. § 2260(a) and three related statutes. (See Crim. No. 08-369, Docket No. 11.) On January 7, 2009, Petitioner pleaded guilty to violating § 2260(a) by knowingly employing, using, persuading, inducing, enticing, or coercing a female minor to engage in sexually explicit conduct outside of the United States for the purpose of producing a visual depiction of such conduct, intending that the visual depiction be imported into the United States. (Crim. No. 08-369, Docket No. 26.) Agreeing to the plea, the government dismissed the three remaining counts against Petitioner. (Docket No. 5 at 3.) A few days later, Petitioner pleaded guilty before the U.S. District Court of the Virgin Islands on related charges. (Docket No. 1 at 2.)

This court sentenced Petitioner to fifteen years of imprisonment plus five years of supervised release. (Crim. No. 08-369, Docket No. 33.) Fifteen years was the sentence the parties agreed to recommend in Petitioner's plea agreement. (Crim. No. 08-369, Docket No. 27

Civil No. 10-1386 (JAF)                                                                                                          -3-

at 3.) In addition, as noted in the plea agreement (id. at 2), pleading guilty subjected Petitioner to a statutorily mandated minimum sentence of fifteen years. See 18 U.S.C. §§ 2251(e); 2260(c)(1).

Petitioner waived his right to appeal in his plea agreement (Crim. No. 08-369, Docket No. 27 at 4), but he nevertheless appealed (Crim. No. 08-369, Docket No. 35). Less than two months later, Petitioner, via appellate counsel, moved to voluntarily dismissed his appeal. Mot. Voluntary Dismissal, United States v. Cancel, No. 09-1682 (1st Cir. June 9, 2009). The First Circuit dismissed the appeal pursuant to that motion. (Crim. No. 08-369, Docket No. 39.)

## II.

### Standard for Relief Under 28 U.S.C. § 2255

A federal district court has jurisdiction to entertain a § 2255 petition when the petitioner is in custody under the sentence of a federal court. See 28 U.S.C. § 2255. A federal prisoner may challenge his or her sentence on the ground that, inter alia, it "was imposed in violation of the Constitution or laws of the United States." Id. The petitioner is entitled to an evidentiary hearing unless the "allegations, accepted as true, would not entitle the petitioner to relief, or . . . 'are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" United States v. Rodríguez Rodríguez, 929 F.2d 747, 749–50 (1st Cir. 1991) (quoting Dziurgot v. Luther, 897 F.2d 1222, 1225 (1st Cir. 1990)); see 28 U.S.C. § 2255(b).

## III.

### Analysis

Because Petitioner appears pro se, we construe his pleadings more favorably than we would those drafted by an attorney. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

Civil No. 10-1386 (JAF) -4-

Nevertheless, Petitioner's pro se status does not excuse him from complying with procedural and substantive law. Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997).

Petitioner claims that he suffered ineffective assistance of counsel, in violation of the Sixth Amendment, when his counsel failed to move for suppression of the evidence gathered from the cell-phone search and the interview described above.[2] (Docket No. 1.) Petitioner alleges that suppression would have been proper because the officers' conduct violated (1) his Fourth Amendment right to be free from unreasonable searches and seizures, in that the warrantless search of his cell phone lacked probable cause because the information the ICE special agent received was via anonymous tipster and had not been independently corroborated;[3] and (2) his Fifth Amendment right to be free from self-incrimination, in that he did not intelligently waive his Miranda rights because he was incompetent at the time of the interview. (Id.) Petitioner also claims ineffective assistance of counsel in that his appellate counsel failed to prosecute his appeal, which, Petitioner alleges, was dismissed for failure to prosecute.[4] (Id. at 8.)

Petitioner further alleges that he is entitled to relief under § 2255 because (1) during sentencing, this court applied the federal guidelines as mandatory rather than advisory (id. at 8); and (2) he was convicted of an offense other than that charged in the indictment (id. at 10).

We first address Petitioner's two grounds for ineffective assistance of counsel and then

---

[2] Petitioner also requests suppression of the evidence (Docket No. 1), but no such remedy is available in a post-conviction setting.

[3] Petitioner also alleges that the tipster's information was false (Docket No. 1), but even if true, that would not render the warrantless search unconstitutional if the search were, nevertheless, deemed reasonable under the Fourth Amendment.

[4] Petitioner also complains about his representation before the U.S. District Court of the Virgin Islands (Docket No. 1 at 7), but any such complaint must be made via a § 2255 petition filed in that court, see 28 U.S.C. § 2255(a) ("[A petitioner] may move the court which imposed the sentence to vacate, set aside or correct the sentence.").

Civil No. 10-1386 (JAF)                                                                                           -5-

turn to his claims regarding sentencing and the indictment. For the reasons stated below, we find Petitioner is not entitled to relief under § 2255.

### A.  Ineffective Assistance of Counsel

To be valid, a guilty plea must be made voluntarily and intelligently. See Hill v. Lockhart, 474 U.S. 52, 56 (1985). "A guilty plea may be considered unknowingly and involuntarily entered if, in connection with the decision to plead guilty, the defendant does not receive reasonably effective assistance of counsel." United States v. Rosario-Puente, 41 F.App'x 483, 483 (1st Cir. 2002) (per curiam) (citing Hill, 474 U.S. at 56–57).

The Sixth Amendment "right to counsel is the right to the effective assistance of counsel." Strickland v. Washington, 466 U.S. 668, 686 (1984) (internal quotation marks omitted); see U.S. Const. amend. VI. To establish ineffective assistance, a petitioner must show both that his counsel's performance was deficient and that he suffered prejudice as a result of the deficiency. Strickland, 466 U.S. at 686-96. To show deficient performance, a petitioner must "establish that counsel was not acting within the broad norms of professional competence." Owens v. United States, 483 F.3d 48, 57 (1st Cir. 2007) (citing Strickland, 466 U.S. at 687–91). To show prejudice in the context of a guilty plea, a petitioner must demonstrate that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59.

#### 1.  Failure to Move to Suppress

In 2002, the First Circuit applied Hill v. Lockhart, 474 U.S. 52, in considering on direct appeal whether a defendant's counsel's decision to withdraw the defendant's motion to suppress amounted to ineffective assistance of counsel. 41 F. App'x 483. The court determined that to demonstrate deficient performance, the petitioner needed to show that "the motion to suppress

Civil No. 10-1386 (JAF)                                                                                                          -6-

was likely to succeed." Id. at 484. Under the guidance of that opinion, we consider whether Petitioner's forgone motion to suppress would have been likely to succeed.[5]

      **a.**    **Cell Phone**

Petitioner argues that the warrantless search of his cell phone violated the Fourth Amendment because the officers lacked probable cause. (Docket No. 1 at 3–8.) Acknowledging that the officers acted on information from a tipster, he alleges that the tipster was anonymous and that the information received was not independently corroborated. (Id.)

In the context of a border search, a warrantless, suspicionless search of property ordinarily will not run afoul of the owner's Fourth Amendment rights. In United States v. Flores-Montano, the U.S. Supreme Court explained that at an international border, "the Government's interest in preventing the entry of unwanted persons and effects is at its zenith," while an individual's "expectation of privacy is less at the border than it is in the interior. " 541 U.S. 149, 153–54 (2004). The Court there indicated that unless a border search of property results in "serious damage to, or destruction of, the property," id. at 154, or is carried out in a "particularly offensive manner," id. at 154 n.2, it will not violate the owner's Fourth Amendment rights. See, e.g., United States v. Arnold, 533 F.3d 1003, 1006–08 (9th Cir. 2008) (interpreting Flores-Montano to contemplate only those two exceptions to the constitutionality of border searches of property and deeming constitutional one such search of an airline passenger's laptop); see also United States v. Bunty, 617 F. Supp. 2d 359, 364–65 (E.D. Pa. 2008) (documenting various circuits' findings that border searches of personal electronic devices require no reasonable suspicion).

---

[5] Petitioner does not claim that he would have proceeded to trial had his counsel informed him that he could suppress the evidence at issue (Docket No. 1), as would be required to establish the prejudice prong of the Strickland analysis. Nevertheless, we infer from his petition that a likelihood of suppression would have affected his decision to plead guilty.

Civil No. 10-1386 (JAF)                                                                                              -7-

We, therefore, find that Petitioner could not have prevailed on a motion to suppress the evidence acquired from the border search of his cell phone on the basis that the search was warrantless and executed without probable cause. Therefore, Petitioner cannot demonstrate deficient performance by his counsel for not having pursued such a motion.

### b. Waiver of Miranda Rights

Petitioner claims that he was incompetent when arrested, because of the mental effect of his wife's recent death, and that his waiver of his Miranda rights was, therefore, unintelligent. (Docket No. 1 at 7.)

A valid waiver of Miranda rights must be voluntary and intelligent. See Miranda v. Arizona, 384 U.S. 436, 444 (1966). In order to be intelligent, the "'totality of the circumstances surrounding the investigation' must show that the defendant had 'a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.'" Collins v. Gaetz, No. 09-2212, 2010 WL 2735744, at *12 (7th Cir. 2010) (quoting Moran v. Burbine, 475 U.S. 412, 421 (1986)).

In a recent opinion, the Seventh Circuit discussed at length the U.S. Supreme Court's precedent regarding the intelligent waiver of Miranda rights. See id. The court there noted that "federal Courts of Appeals . . . have followed the Supreme Court's instructions by requiring the government to clear only a relatively low bar in proving an intelligent waiver." Id. "It is only when the evidence in the case shows that the defendant could not comprehend even the most basic concepts underlying the Miranda warnings that the courts have found an unintelligent waiver," for example when the defendant could not understand the language in which the Miranda warning was given. Id. With this instruction in mind, we consider the evidence regarding the intelligence of Petitioner's waiver.

Civil No. 10-1386 (JAF)                                                                                                         -8-

We begin by noting that Petitioner identifies the then-recent death of his late wife as the cause of the incompetence rendering him unable to intelligently waive his Miranda rights. (Docket No. 1 at 7.) He also states that his wife died on February 24, 2008—over seven months before his arrest. (Id. at 5.) A similar claim arose before the Ninth Circuit, when a defendant claimed that the recent death of his nephew rendered him so emotionally disturbed that he could not have intelligently waived his Miranda rights. See United States v. Marquez-Lerma, 203 F. App'x 1 (9th Cir. 2006). In upholding the district court's decision that the defendant's waiver was knowing and intelligent, the Ninth Circuit noted that the defendant "was not arrested immediately following his nephew's death, but rather, several days afterwards, thus reducing the likelihood of intense emotional distress." Id. at 4.

The court in Marquez-Lerma also took into account that all officers involved in the defendant's arrest testified that he was "coherent" and "reasonable." Id. at 5. In the case at hand, the record contains the affidavit of the ICE special agent who interviewed Petitioner on the day of his arrest and received the confession at issue (Crim. No. 08-369, Docket No. 1-2). The agent testified via affidavit that Petitioner "voluntarily waived" his Miranda rights. (Id. at 3.) She also described the details of the interview, including Petitioner's initial assertion that the minor female was eighteen years old. (Id. at 2–3.) The ability to lie when faced with the possibility of punishment has been deemed evidence that a defendant had the requisite mental capacity to waive Miranda rights. See, e.g., Collins, 2010 WL 2735744, at *14 ("It was not unreasonable for the . . . courts to infer from [the defendant's] changing story that he knew how to deceive and understood the situation that he was in when the police took him to the station.").

Given the totality of the circumstances—in particular, the length of time that passed between the death of Petitioner's wife and his arrest—we find incredible Petitioner's claim that

Civil No. 10-1386 (JAF) -9-

his waiver was unintelligent, and we find it at odds with evidence on the record that he was lucid at the time of his arrest. In light of the cases cited above, we find that Petitioner would not have been likely to succeed on a motion to suppress his confession. We, therefore,m find that his counsel did not perform deficiently in failing to pursue such a motion.

### 2. Failure to Prosecute Appeal

Petitioner claims that his appellate counsel failed to prosecute his appeal and that the First Circuit dismissed his appeal due to that failure. (Docket No. 1 at 8.) But the record shows that Petitioner voluntarily dismissed his appeal. See supra Part I. As the factual premise for this claim is false, Petitioner cannot rely on it to support a claim of ineffective assistance of counsel.

### B. Sentencing

Petitioner claims that this court erred during sentencing by applying the sentencing guidelines as mandatory rather than advisory. (Docket No. 1 at 8.) Even if that were true, it could not have affected Petitioner's sentence, which was the mandatory minimum for the crime to which he pleaded guilty and the sentence recommended in his plea agreement. See supra Part I. We, therefore, find no constitutional violation warranting relief under § 2255.

### C. Indictment

Petitioner claims that he was convicted of a crime different than that for which he was indicted. (Docket No. 1 at 10.) He proceeds to explain that the government had insufficient evidence to establish elements of the crimes listed in his indictment. (Id.) We agree with Respondent (see Docket No. 5 at 7–8) that none of the elements he identifies pertain to the crime to which Petitioner pleaded guilty, see supra Part I. We, therefore, find no constitutional violation warranting relief under § 2255.

IV.

**Certificate of Appealability**

Under Rule 11 of the Rules Governing § 2255 Proceedings, whenever we deny § 2255 relief, we must also determine whether to issue a certificate of appealability ("COA"). We grant a COA only upon "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)).

Based on the reasons stated above, we find that no reasonable jurist could find our assessment of Petitioner's constitutional claims debatable or wrong and we, therefore, deny him a COA. Petitioner may request a COA directly from the First Circuit. See Fed. R. App. P. 22.

V.

**Conclusion**

For the foregoing reasons, we **DENY** Petitioner's § 2255 petition (Docket No. 1). Pursuant to Rule 4(b) of the Rules Governing § 2255 Proceedings, we summarily **DISMISS** this petition, because it is plain from the record that Petitioner is entitled to no relief. We **DENY** Petitioner a COA.

**IT IS SO ORDERED**.

San Juan, Puerto Rico, this 30th day of August, 2010.

s/José Antonio Fusté
JOSE ANTONIO FUSTE
Chief U.S. District Judge